# Commonwealth *v.* Dupuy et al.

[FEBRUARY 23, 1831.]

Where one or more individuals contribute sums of money to employ counsel to carry on a criminal prosecution, it is not maintenance in them to do so, nor does the fact of their so doing go to impeach their credit; though if such aid be given through malicious motives, and without probable cause, they render themselves liable to an action for damages at the suit of the party so prosecuted.

When three or more persons agree to go to a church where divine service is to be performed, and to laugh and talk during the performance of the same in a manner which might be excusable in a tavern; and in so doing manifest a determination to resist by force any effort that may be made to remove them or prevent their so doing, they will be guilty of riot.

It *seems* that the unnecessary performance of secular labours on Sunday, in such a way as to disturb the worship of others, is indictable in Pennsylvania.

THE defendants were indicted for a disturbance alleged to have been committed in the Wiccaco Church, in the county of Philadelphia, where they had met, on Sunday, May 31, 1829, for the purpose of protesting against the preaching of the Rev. Mr. Connelly, whose authority to act as minister they disputed. It appeared that the congregation having assembled, Mr. Connelly attempted to take his place in the pulpit, when one of the defendants interrupted him by telling him he was not the choice of the congregation, handing him a letter to that effect, which he was requested to read. A disturbance ensued, and the result was that Mr. Connelly was forced to withdraw from the Church.

KENNEDY, J., before examining the evidence, which he afterwards did at great length, said:—It has been said that the principal witnesses on the part of the commonwealth, have contributed sums of money to employ counsel to aid in carrying on the prosecution, and that in doing so they have been guilty of the crime of maintenance, which

[ Commonwealth *v.* Dupuy et al. ]

is an indictable offence, and ought to impeach their credit. This I consider a misapplication of the term *maintenance*, which is committed by a person who has no interest or concern in the cause, therein inciting or stirring up one man to sue another; or it may be committed by such a person in supplying money to commence and carry on suits with which he has no concern. If, however, he should be the guardian or parent of the plaintiff, he will be excused; or be otherwise interested in the matter, he will be justified. Interest in the cause of action is sufficient to justify his interference; and if so, it is manifest that maintenance cannot be committed by any one of the community in taking a part in commencing and carrying on a prosecution in the name of the commonwealth, charging the defendants with a public offence, because he has an interest, a deep interest, I would say, in bringing to justice all such as have been guilty of a public offence. Every individual of the community may be considered as a plaintiff in such cases. And we know that it is every day's practice for individuals, private citizens, to take an active part in public prosecutions, and employ counsel to aid the attorney appointed for the commonwealth in conducting and attending to their prosecutions. The motives which induce private citizens thus to interfere in public prosecutions, may be commendable or otherwise. If they do commence and carry them on from malicious motives, and without any probable cause for doing so, they render themselves liable to an action for damages at the suit of the party so prosecuted. If you have discovered that any or all of the witnesses on the part of the commonwealth were under the influence of bad motives in giving their testimony, you no doubt will feel yourselves disposed to make proper allowance for it.

The counsel who first addressed you on behalf of the defendant admitted that the manner of doing the act which is charged as riot is every thing, and may make that crimi-

[Commonwealth v. Dupuy et al.]

nal and amount to a riot, which, when done in a different manner, may be laudable. This is certainly so; but then I understood him to contend that although the time and place might aggravate the offence, they can never make that an indictable offence which otherwise would not be so. To the truth of this proposition I cannot give my assent. I consider that the place in which a thing is done may be of as much importance in making the act a public offence or otherwise, as the manner of doing it. It is laid down as law, and I have no doubt it is so, that a man may call in his friends completely armed to defend and protect himself against a threatened assault in his own house, but if he go abroad thus attended by two or more, with a view to defend himself against a threatened attack, unless indeed it should be to go to the magistrate to make his complaint, it would be considered a riot. The place, in this case then, becomes of the essence of the crime. Can it be doubted for a moment that if three or more agree to go to church when divine service is to be performed, and to laugh and talk during the performance of the same, and behave in such a manner as would be excusable in a tavern, and, in doing so, manifest a determination to resist by force any effort that may be made to remove them or prevent them from doing so, that they would not be guilty of a riot? I would consider it a most aggravated one; yet it is only rendered so by the time and place. Doctor Collin no doubt felt the influence of this distinction, when he came to his door, as is testified, and admonished those who were assembled in his yard making a noise by loud talking, such as had not been usual in that place, that they were not in a tavern.

I also consider it a great mistake to say that you may do in Pennsylvania on the first day of the week, or more commonly called Sunday, whatever you may do on any other day of the week. Without waiting to inquire whether or not God has, as Mr. Dupuy, one of the de-

[ Commonwealth *v.* Dupuy et al. ]

fendants, said, made all days alike, and whether the distinction be of divine appointment or not, it is sufficient to know that the legislature of Pennsylvania have passed acts restraining and prohibiting the doing of certain acts, and prescribing a certain course of conduct on that day. It is forbidden that we should engage in, and follow our usual occupations, unless, indeed, it should be that our daily labour was that of performing acts of necessity or mercy, which are lawful at all times and seasons. The policy of these acts, I think, ought not to be questioned. I presume it will be admitted, by an intelligent mind, that religion is of the utmost importance to every community. The history of the past furnishes abundant evidence of the truth of this proposition. It is the basis of civilization. Without it we should be in a state of moral darkness and degradation, such as usually attend the most barbarous and savage states. It is to the influence of it, that we stand indebted for all that social order and happiness which prevails among us. It is by the force of religion more than by that of our municipal regulations, or our boasted sense of honour, that we are kept within the line of moral rectitude, and constrained to administer to the welfare and comfort of each other. In short, we owe to it all that we enjoy, either of civil or religious liberty. Blessings which certainly cannot be too highly appreciated, but ought not, as the defendants are said to have done upon this occasion, to be used as a cloak to cover a design to disturb the public peace, and to promote a sinister end. Here, then, give me leave to say, that the institution of the Sabbath is, in my humble opinion, not only admirably adapted to promote and establish religion among us, but to secure and preserve our physical as well as moral health and strength.

That this congregation, or some portion of it, was assembled for the purpose of joining in public worship, we may reasonably conclude was the fact; and that such a disturbance was created and produced as to break it up,

[ Commonwealth *v.* Dupuy et al. ]

and prevent public worship from taking place, seem to be testified to by most of the witnesses on both sides.*

---

\* Persons who profess the Jewish religion, and others who keep the seventh day as their Sabbath, are not exempted from the penalties inflicted by the act of 22d April, 1794, upon those who do worldly employment on Sunday. *Com.* v. *Wolf,* 3 S. & R. 48. This decision was lately reviewed and affirmed in the case of *Specht* v. *Com.,* 8 Barr 312, where it was determined that there is nothing in the first section of the act of 1794, for the prevention of vice and immorality, which conflicts with the constitution of Pennsylvania.